# APPENDIX.

## NOTES OF CASES NOT OTHERWISE REPORTED,

WILLIAM HINES, Appellee, v. SUSAN LIGHT *et al.*, Appellants.

Cancellation of Deed: AGREEMENT TO CONVEY: PERFORMANCE: EVIDENCE.

*Appeal from Page District Court.*—HON. GEORGE CARSON, Judge.

TUESDAY, MAY 26, 1891.

THIS is an action in equity by which the plaintiff demands a decree canceling a deed for a farm made by the defendant, Susan Light, to the defendant, E. H. Light, and compelling the said Susan Light to convey an undivided one-half of said farm to the plaintiff. The ground of the plaintiff's claim is that the said farm was bought by the plaintiff and Susan Light, jointly, from one Beal, and that by agreement the conveyance was made to said Susan Light, because the farm was mortgaged, and that by conveying to one of the joint purchasers it would be more convenient to procure a renewal of the mortgage which the said purchasers agreed to pay. There was a decree for the plaintiff, and the defendants appeal.—*Affirmed.*

*Clark & Hill,* for appellants.

*W. W. Morsman* and *Raymond Loranz,* for appellee.

ROTHROCK, J.—The following facts appear to us to be established by the admissions of the parties, or by a fair preponderance of the evidence: In the month of December, 1888, the plaintiff and the defendant, Susan Light, made a joint purchase of a farm of about one hundred and sixty acres. The land was incumbered with a mortgage of eighteen hundred dollars, which the purchasers agreed to pay. The whole consideration agreed to be paid for the land was about forty-eight hundred dollars. Of this amount two thousand and ninety dollars was paid by the plaintiff, and about nine hundred dollars was paid by Susan Light. These sums, with the amount of the mortgage, made up the whole of the purchase money. When the time came to make the conveyance it was agreed that the title should be taken in the name of Susan Light, and, after a renewal of the

mortgage, she should convey to the plaintiff one-half of the land. The loan was renewed, but no conveyance was made to the plaintiff, and the said Susan Light conveyed the land to her son, E. H. Light. We have said that these facts are established by a preponderance of the evidence. It is true that it is denied by the defendants that any agreement was made to convey any interest in the land to the plaintiff. They contend that the plaintiff paid the two thousand and ninety dollars of the purchase money as a gratuity or favor to Susan Light, or as an antenuptial provision for her as they were then under contract of marriage. But we do not think this claim finds sufficient support in the evidence to justify it to be found as a fact.

The main defense to the action, and that upon which the decree is founded, is the claim made by the defendant that she repaid to the plaintiff the said sum of two thousand and ninety dollars in full satisfaction for all demands. This the plaintiff denies. A large amount of evidence was taken upon this question. The greater part was taken in open court, and the witnesses were under the immediate observation of the learned judge who presided at the hearing. It appears that the defendant, Susan Light, is a divorced woman. The divorce was procured upon the complaint of her husband. After the separation the husband went to the state of Texas. He is a lawyer, and is practicing his profession in some village in Texas, with a population of one hundred and fifty to two hundred inhabitants. The defendant, E. H. Light, is a son of the said marriage. He is a young man of about twenty-one years of age, and all the evidence is to the effect that he is a gambler and a dissolute character generally. It is not claimed by the defendant that Mrs. Light had the money in her own right with which the alleged payment of two thousand and ninety dollars was made to the plaintiff. It is claimed, however, that the said E. H. Light went to Texas, and that while there his father gave him twenty-five hundred dollars in paper money, and that he carried the money on his person or in his satchel from Texas to Page county in this state, and paid it to his mother, and that on a certain day, about noon, Mrs. Light paid out of said money the sum of two thousand and ninety dollars to the plaintiff. It appears that after the purchase the parties took possession of the farm, and the plaintiff managed it and carried on the farming operations, and all lived in one house. It appears from the evidence of the elder Light, and from that of the son and another party in Texas, that the money was paid to E. H. Light, by his father. And the defendant, Susan Light, and, E. H. Light and his wife all testify that the money due the plaintiff was paid to him. The plaintiff in his testimony denied that any payment was made to him by Mrs. Light, and he is to some extent corroborated by one Ellison, who claims that he was with the plaintiff at the house at the time it is claimed that the money was paid. This is about the substance of the oral evidence upon the question of payment. There may be one or two other circumstances which tend to weaken the evidence on the part of the defendants. There is the particularity as to the time, place and circumstance attending the alleged payment; the positiveness with which one or two of the

witnesses testified to the denomination of the paper money, and the fact that no receipt was taken, which rather tend to weaken the confidence in the testimony in behalf of the defendants. But we think if this were all the evidence we would hold that the fact of payment was established by a preponderance of the evidence. But this is not all the evidence. It appears that the father of the defendant, E. H. Light, has a daughter, who resides at Topeka, Kansas. This daughter wrote a letter to her father, in which she expressed her desire to have the son go home, and reform, and quit playing cards. The father answered this letter, and, as it is an important and, as we think, a controlling item of evidence, we set it out in full. It is as follows:

"Pontotoc, Texas, July 15, 1889.

*"Em and Jack.*

"My Dear Children:—Your letter came a few minutes ago. Van left about one week ago, and you have doubtless seen him ere this, I told him to see you before he left Topeka. I talked a great deal to Van, tried hard to get him to remain, but he said he must go back. I gave him thirty dollars; he said he would arrange to come back to Texas and go into my office and quit gambling and never touch another card. Now, Emma, I find Van is a wild and reckless boy, given to gambling as you say; I've got to keep close watch over him, your suggestion about sending for Mary was good, I talked the thing to Van, he was of the opinion that he must go back and she could not come without him, he seems to think lots of her but I'm afraid the marriage stands as you say. I shall send whatever money I do send to you, and you can get their effects and send them to Austin and I can go to Burnett and meet them. I will get a letter from Van soon. I thank you for the history you have given me, it will enable me to act advisably with him. Emma, I shall do all in my power to have Evander do right and make a man of himself. How easy it would be for him if he would write me what he expected to do about coming. I told him I would arrange it for him, and he should live on my place of one hundred and sixty acres just south of the old place or build him a little place in town. I want him to do and live a different life. I made him promise me in any event he would not drink, said he would always think of that when tempted to drink."

This letter was written on the very day that it is claimed that the money was paid by Mrs. Light to the plaintiff. It shows with almost absolute certainty that Light, the younger, left Texas with thirty dollars paid him by his father, and not with twenty-five hundred dollars. The attention of the elder Light was called to this letter, and the explanation he makes is not at all satisfactory to any trier of the facts. Indeed, the letter in our opinion completely explodes the claim that any money was paid to the plaintiff.

We have presented such of the evidence in detail as we think warrants us in finding that the decree of the district court is right. We do not usually set out the evidence in equity causes. In the present case we have done so because of the peculiarities attending the controversy between the parties. The plaintiff is not a man of exemplary character

in some respects, but no attack was made upon his character for truth, and we are of the opinion that the court rightly decided that the equities of the case demanded the relief which he prayed. And this disposition of the case renders it unnecessary to determine a motion filed by appellee. AFFIRMED.